**ORIGINAL**

RECIEVED
UNION CORRECTIONAL INSTITUTION
OCT 16 2018
BY:
FOR MAILING

### UNITED STATES DISTRICT COURT FOR NORTHERN DISTRICT OF FLORIDA, TALLAHASSEE DIVISION

WALI SALEEM ##037727
    Plaintiff,

V.

CASE NO.: ~~f:18 CV 473 MW CJ12~~

CENTURION OF FLORIDA, LLC.,

JOHN DOE #1-3,
Individual Capacity
E. PEREZ—LUGO,
Former, Chief Health Officer UCI
Individual Capacity,
THOMAS REIMERS,
Director Health Services,
Individual Capacity,
ERRON CAMPBELL
Medical Director,
Individual Capacity,
DANIEL CHERRY,
Centurion's Former Medical Director FDC.,
Individual Capacity
JULIE L. JONES, Secretary, FDC
Official Capacity, DeclaratoryAnd Injunctive Relief
                    Defendants,

### 42 U.S.C. § 1983 CIVIL RIGHTS COMPLAINT
### DECLARATORY AND INJUNCTIVE RELIEF
### JURY TRIAL SOUGHT

## I.  PLAINTIFF:

Name of Plaintiff:    Wali Saleem
Inmate Number        #037727
Prison or Jail:  Union Correctional Institution
Mailing Address:     P. O. Box 1000
Raiford, Florida
32083

## II.  DEFENDANTS:

(1) <u>CENTURION Of FLORIDA, LLC</u>
Official Position: Current Contract Medical Provider For The FDC
Paddock Park Prof. Bldg. 3200 S.W. 34th Ave. Bldg. 700, Suite 701, Ocala, Fla. 34474

(2 JOHN DOE #1-3,
Official Position: Employee Centurion Of Florida, LLC.
Mailing Address: not yet identified.
Individual Capacity

(3) E. PEREZ—LUGO
Official Position: Former Chief Health Officer UCI
Mailing Address: 216 S.E. Corrections Way, Lake City, Fla. 32025-2013
Individual Capacity

(4) THOMAS REIMERS,
Health Services Director,
Mailing Address: 501 S. Calhoun St., Tall., Fla. 32399-2500
Individual Capacity

(5) DANIEL CHERRY,
Centurion's Former Medical Director FDC
Paddock Park Prof. Bldg. 3200 S.W. 34th Ave. Bldg. 700, Suite 701, Ocala, Fla. 34474
Individual Capacity

(6) ERRON CAMPBELL
Medical Director, Centurion medical
1203 Governor's Sq. Blvd
Tall., Fla. 32301
Individual Capacity

(7) JULIE L. JONES,
Official Position: Secretary, FDC
501 S. Calhoun St., Tall., Fla. 32399-2500
Official Capacity, Declaratory & Injunctive Relief

## III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding condition or events in any prison, jail, or detention center.  42 U.S.C.§1997e(a).
Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal. Plaintiff has exhausted all available administrative grievances. Defendant Jones possesses all grievances filed in this matter.

## IV.   PREVIOUS LAWSUITS

NOTE FAILURE TO DISCLOSE ALL PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE.  IF YOU ARE UNSURE OF ANY CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A. Have you initiated other actions in <u>state court</u> dealing with the same or similar facts/issues involved in this action?

Yes( )        No( XXX )
1.       Parties to previous action:
 (a)      Plaintiff(s): N/A
 (b)      Defendant(s) N/A
2.       Name of judge: N/A     Case #: N/A
3.       County and judicial circuit: N/A
4.       Appropriate filing date: N/A
5.       If not still pending, date of dismissal: N/A
6.       Reason for dismissal: N/A
7.       Facts and claims of case: N/A
 (Attach additional pages as necessary to list state court cases.)

B. Have you initiated other actions in federal court dealing with the same or *similar* facts/issues involved in this action?

Yes( XX )         No( )
1.       Parties to previous action: Saleem  v. Corizon, LLC.
 (a)      Plaintiff(s): Wali Saleem
 (b)      Defendant(s) Corizon, LLC.
2.       Name of judge:     Case #: # 3:15-cv-1195-TJC-PDB
3.       County and judicial circuit: Middle District, Jacksonville
4.       Appropriate filing date: 10-6-2015
5.       If not still pending: Settled
6.       Reason for dismissal: Settled
7.       Facts and claims of case: refusal to treat Hep "C", Policy and Practice of non-treatment, 8th Amendment violation.
 (Attach additional pages as necessary to list state court cases.) Please see pages 4 "A"

C       Have you initiated <u>other actions</u> (*besides those listed above in Questions (A) and (B))* in either state or federal court that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes( X )       No(   ) Please see pages 4"A"

If yes, describe each action in the space provided below.  If more than one action, describe all additional cases on a separate piece of paper, using the same format as below:

     (a)    Plaintiff(s): Wali Saleem
     (b) Defendant(s) State of Florida, 773 So.2d 89 (Fla. 5th DCA 2000)
     2. Name of judge: Frank N. Kaney.
     3. County and judicial circuit:Orange County, Ninth Judicial Circuit
     4.    Approximate filing date: 1999
     5.    If not still pending, date of dismissal: 2000
     6.    Reason for dismissal: No grounds
     7.    Facts and claims of case: Documents lost, cannot remember.
     1.    Parties to previous action: Wali Saleem, State of Florida
     (a)    Plaintiff(s): Wali Saleem
     (b)    Defendant(s) Respondent: State of Florida, 805 So.2d 809 (Fla. 2002).
     2. Name of judge: unknown
     3. County and judicial circuit: Leon County, Florida Supreme Court
     4.    Approximate  filing date: 2000
     5.    If not still pending, date of dismissal: 2002
     6.    Reason for dismissal: Declined to accept Jurisdiction
     7.    Facts and claims of case:Review/Appeal of 773 So.2d 89 (5th DCA 2000)
     (b)    Defendant(s) State of Florida
     2.    Name of judge: Anthony Johnson.
     3. County and judicial circuit:Orange County, Ninth Judicial Circuit
     4.    Approximate filing date: 2003
     5. If not still pending, date of dismissal: 2004,889 So.2d 84 (Fla. 5th DCA 2004).
     6.    Reason for dismissal: untimely.
     7.    Facts and claims of case: Documents lost, cannot remember
     (Attach additional pages as necessary to list state court cases.)

D.    Have you ever had any actions in federal court dismissed as frivolous, malicious, failing to state a claim, or prior to service?  If so, identify each  and every case so dismissed:

Yes (    )          No( XXX )

1. Parties to previous action:
(a) Plaintiff(s):
(b) Defendant(s)
2. Name of judge:
3. County and judicial circuit
4. Appropriate filing date:
5. If not still pending, date of dismissal:
6. Reason for dismissal:
7. Facts and claims of case:
     (Additional pages as necessary to list the specific instances.)

## STATE COURT CRIMINAL

WALI SALEEM v. STATE OF FLORIDA, Appellee.

Fifth District

978 So. 2d 222; (Fla.5[th] DCA 2008)

Ineffective assistance of counsel.

Rule 3.850 Appeal from the Circuit Court for Orange County, Judge,John H. Adams.

WALI SALEEM, v. OFFICE OF THE STATE ATTORNEY

Fifth District

998 So. 2D 76; (Fla.5[th] DCA 2008) Quo Warranto petition.

Judge, Pleus, J.

WALI SALEEM v. STATE

Fifth District

44 So. 3rd 599; (Fla. 5th DCA 2010)

Judge, Walter Komanski.

WALI SALEEM v. DIANE ANDREWS, WARDEN, Et Al.

Fifth District

132 So. 3Rd 229 (Fla. 1st DCA 2014), Conditions of Confinement.

Judge, Stanley H. Griffis, III.

WALI SALEEM v. STATE,

Fifth District

150 So.3rd 1175 (Fla. 5th DCA 2014), Rule 3.800 appeal.

Judge, Tim R. Shea.

WALI SALEEM v. STATE,

Florida Supreme Court

192 So.3[rd] 41 (Fla. 2015)

Declined to accept jurisdiction.

Judge, unknown.

WALI SALEEM v. STATE,

200 So.3[rd] 1284 (Fla. 5th DCA 2016) Rule 3.850 appeal.

Fifth District

Judge, Heather L. Higbee.

**FEDERAL COURT CRIMINAL FILINGS**
2254 FILED Middle District
On or about 2015-2016
Grounds raised, abuse of discretion.
No evidentiary hearing.
COA denied
11th Circuit Affirmed.
Unknown date of decision.


WALI SALEEM v. STATE OF FLORIDA,
SUPREME COURT OF THE UNITED STATES
CASE NO. 17-5453
CERTIORARI APPLICATION DENIED 2017.

     Plaintiff swears that he has tried to recall all prior filings, in good faith. Review of the UCI—LEXISNEXIS research program does not reveal any other elder litigation. Moreover, Plaintiff's medical condition significantly impairs his memory process. Nonetheless, Plaintiff has made every effort to comply with the PLRA requirement.

## OVERVIEW

Plaintiff's now near fatal liver disease results from Hepititus "C" condition for which Defendants would not treat. Defendant Centurion utilized a simple policy and practice to deny care by institutional physician. Deprivation of standard of care was then ratified by Secretary Jones, via IISC positions {Impaired Inmate Services Coordinator}. In this instance, Plaintiff was promised care which for years after Centurion's role as health care provider, was not provided. Such matters as, lying about availability of care and willful concealment of FBOP evaluation and treatment guidelines, underline reprehensible conduct by Defendants. Plaintiff was not treated until Hoffer v. Jones and Defendant Centurion's realization that denial of care was no longer possible.

Defendants Policy to defy treatment for Plaintiff's hepatitis "C" was on behalf and in the stead of corporate positions regarding employment with contract health provider. Each of these Defendants by vestige of their positions, were charged with obligation to prevent the actions and inactions of these claims. Facts well plead, medical and grievance records produced from FDC, will clearly flesh out the practice of policy enactment. The denial of care, in favor of profit; results in Plaintiff's torment and sorrow. Ignoring the requirement to treat Plaintiff's Hepatitis "C" has resulted in scarring of his liver and Plaintiff although now cured of the infection, is an F4 on the METAVIR scale. Centurion's deliberate choice to ignore the requirement of Plaintiff's care by administering DAA's was a "regulatory measure." Such a policy and practice was covered up by Secretary Jones, via IISC positions as regards health care grievances, {HCGs}. Finally, no dietary considerations exist nor supplements provided for Plaintiff, nor are their vitamins of worth provided or purchasable by Plaintiff.

## V.    STATEMENT OF FACTS:

State briefly the FACTS of this case. Describe how each Defendant was involved and what each person did or did not do which gives rise to your claim. In describing what happened, state the names of persons involved, dates, and places. Do not make any legal arguments or cite to any cases or statutes. You must set forth separate factual allegations in separately numbered paragraphs. You may make copies of this page if necessary to supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages should be attached. (if there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)

**(1)** Plaintiff is currently incarcerated at Union Correctional Institution and at all times relevant hereto was under the care, custody and control of the State of Florida, Department of

Corrections. Plaintiff is currently 70 years of age and has been incarcerated since 1999.  At the times relevant hereto, Plaintiff suffered from Hepatitis "C" and the disease had escalated to such a level that Plaintiff is now rated an F4 on the METAVIR scale. The amount of liver scarring a patient has is usually measured on the METAVIR scale. On this scale, a person can be classified F0 (no fibrosis), F1 (mild fibrosis), F2 (moderate fibrosis), F3 (severe fibrosis), or F4 (cirrhosis). The rate at which patients progress along this scale differs among the population. Defendant Centurion was well aware of these facts in relation to Plaintiff's condition when utilizing the policy and practice not to treat Plaintiff. Plaintiff is currently under the care of Defendant, Centurion, via Defendant Jones.

(2)  Under the June 2014, FBOP Guidelines, adopted by the CDC, patients were supposed to be prioritized for triple drug therapy based upon the advancement of hepatic fibrosis, or cirrhosis, whether the patient is a liver transplant recipient or has a HIV co-infection, or whether the patient has a comorbid medical condition associated with HCV, such as certain types of lymphomas. The degree of fibrosis may be determined in several ways. The AST-to-platelet ratio index ("APRI") is the FBOP-preferred method for non-invasive assessment of hepatic fibrosis and cirrhosis. Liver biopsies and abdominal ultrasounds in this time period could also used to identify findings consistent with cirrhosis. Although the APRI score is useful in most cases, it is not an exact predictor of cirrhosis. Sometimes patients with high APRI scores show no signs of fibrosis or cirrhosis on ultrasounds or biopsies. In June 2014, the FBOP recommended prioritizing patients who had APRI scores of 1.0 or greater, or whose APRI score was between 0.7 and 1.0, along with other findings suggestive of advanced fibrosis. Under these guidelines, Plaintiff's need for treatment was apparent when Defendant Centurion became Plaintiff's health care provider.

(3)  Plaintiff was informed in June, 2014 by (then) treating physician, Doctor Linda Melendez Torres (Doctor Melendez, Corizon, not a defendant in this cause ), that Plaintiff suffered from Hepatitis C, a very serious infection that would advance to liver disease. It was physician's assessment that delay in drug treatment would exponentially increase in the odds against Plaintiff's success and result in liver damage. In December of 2014, Doctor Melendez, in accordance with then Corizon's protocol, implemented written application in which she recommended Plaintiff Saleem to be treated with the new DAA's drugs. The physician assured Plaintiff that the DAA drugs were new drugs for treating Hepatitis C infections in adults, which

had a high potency against the disease, and consequently very expensive. Doctor Melendez further explained this new generation of 'breakthrough' drug treatment, viz, the Hepatitis C standard of care, would cure Plaintiff's infection in three months from its inception.

(4) In July 2015, the FBOP revised its HCV Guidelines to reflect the availability of *new* treatments and established the *new* standard of care. The FBOP provided that certain cases are at higher risk for complications or disease progression and require more urgent consideration for treatment. The patients at Level 1, or highest priority, are those with known decompensated cirrhosis, liver transplant candidates or recipients, patients with hepatocellular carcinoma, those with comorbid medical conditions associated with HCV, those taking immunosuppressant medications, and newly incarcerated inmates already receiving treatment. Patients at Level 2, or high priority, include those with APRI scores greater or equal to 2.0, those with advanced fibrosis on a liver biopsy. Patients at Level 3, or intermediate priority, include those with APRI scores between 1.5 and 2.0, those with Stage 2 fibrosis on a liver biopsy, those with diabetes mellitus, and those with porphyria cutanea tarda. Patients at Level 4, or routine priority, are those with Stage 0 to stage 1 fibrosis on liver biopsy, and all other cases of HCV infection that meet the criteria for treatment. Under these guidelines, Plaintiff's need for treatment was apparent. Plaintiff was not provided treatment by Corizon LLC., due to cost. Each Defendant acted per custom, policy, as plead *infra*.

(5) In April 2016, the FBOP revised its HCV Guidelines to reflect the availability of three *new* treatment drugs. The 2016 Guidelines did not change the way APRI scores are used to prioritize patients for treatment. Plaintiff still had not received the treatment despite have been recommended in 2014 by Corizon LLC physician, Dr. Linda Melendez Torres. Under these 2016 guidelines, Plaintiff's need for treatment was apparent. Plaintiff was intentionally ignored and then denied treatment by Corizon LLC., at that time. Each Defendant acted per custom, policy not to treat due to cost.

(6) In August 24, 2016, Defendant Centurion replaced Corizon as FDC health care provider. Defendant Centurion was aware of the number of HCV affected prisoners and the policy and custom left in place by Corizon not to evaluate and or treat per the guidelines of ¶ #2-5, *supra*. Centurion was aware of the FDC grievance process insulating then Corizon, then Centurion, via FDC Impaired Inmate Services Coordinators {IISC} and other agents yet identified. Centurion immediately agreed to the "Corizon method," that all HCGs grieving

deprivation of care would be summarily, boiler plate denied. Both <u>Corizon</u> and <u>Centurion</u> had complicit approval by Defendant <u>Jones</u> (FDC) to conceal existence of and not evaluate or treat per ¶ #2-5. Moreover, medical code listings for those infected with Hep C and critically ill offenders were manipulated, by concealing the number of those infected, as well as Plaintiff's condition. This policy and practice was based upon the cost of the evaluation and treatment regimes and <u>FDC</u> agreed to the same. This was a factor in the contract price for prison health care which would have been sizably more, {less profit} had adherence to ¶ #2-5 been required. Indeed, <u>Corizon</u> quit. The Court may take judicial notice of <u>Copeland v. Jones</u> et al., 4:15-cv-00452-RH-CAS, "hernia settlement," as well as <u>Hoffer v. Jones</u>, 2017 U.S. Dist. LEXIS 194544 (U.S.D.C. Tall. 11-17- 2017), regarding both companies individual and joint ventures not to treat to increase profit. Defendant <u>Centurion</u> was employed by way of a no bid contract.

(7) Corizon's Medical personnel instituted protocol for treatment of Hepatitis C that encompassed non-treatment modalities including an A.T.P. <u>A</u>lternatiave <u>T</u>reatment <u>P</u>lan, that actually parceled Aspirins and Water Pills in lieu of much more expensive DAA drugs.

(8) Appearing by way of no bid contract Defendant <u>Centurion</u> replaced Corizon's contract in August 24, 2016, becoming FDC health care provider. Corizon's contract contained the proviso re chronic diseases on page 8, ¶2. The relevant section provides:

> "Intervention for inmates with chronic disease must meet
> generally recognized standard of care."

The <u>A</u>lternative <u>T</u>reatment <u>P</u>lan which involved aspirins and water pills was a mock treatment and departed in so stark a manner from "recognized standard of care" <u>mandated</u> by contract, that it constitutes deliberate indifference. This indifference became <u>Centurion's</u> format with approval of Secretary Jones.

(9) The denial of Corizon's care then gave way to <u>Centurion's</u> denial--delay of acceptable treatment for such an obviously serious medical need. Plaintiff on several occasions encountered Dr. E. Perez—Lugo, then an employee of Defendant <u>Centurion,</u> and was told that care by DAA's was not necessary, but that Plaintiff was being monitored and would be informed if treatment was necessary. Plaintiff was informed by Defendant <u>Dr. E. Perez—Lugo</u> that if Plaintiff's name was on a treatment list for DAA's, Plaintiff would be contacted when his turn had arrived. It was apparent to <u>Dr. E. Perez—Lugo</u> and all other defendants named herein that

the delay would exacerbate the infection and escalate liver scarring. The decision to delay treatment was medically unjustified in violation of standards of care and was fostered by Centurion's policy and practice not to spend money on DAA's. Defendant Jones-FDC was well aware of the policy and practice and permitted and assisted in implementation of the same via FDC established custom of denying all health care grievances {HCGs}, by created positions of impaired inmate services coordinator {IISC}et. al. During this period, one Ebony O. Harvey, repeatedly appears in FDC, HCG records as IISC, establishing "bolier plate" pattern of denials and "don't call us we'll call you" responses. In this instance, Plaintiff's formal grievance dated 9-9-2015 states in part: "Please be advised that a liver biopsy is not clinically indicated at this time. However, your appeal is being approved to the extent that you met the criteria for management and you will be advised when this will begin. In the meanwhile you will continue to be monitored in the chronic illness clinic, which may include further testing, to ensure that there is no deterioration pending the start of your medication regimen." (FGResp. 15-6-27413)

(10) When Defendant Centurion became FDC health care provider, up to 90% of the persons employed were those previously employed by Corizon LLC. Defendant Centurion was at the time of their no bid contract award, aware of the large numbers of HCV infected prisoners, and the obligation to provide the FBOP—CDC standards of care. Nonetheless, Defendant Centurion would not spend the funds to treat Plaintiff with DAA's and Defendant Jones had an agreement with persons yet named, not to require Defendant Centurion to purchase DAA's and not to request funds from the State to purchase DAA's.

(11) As a result of the inescapable judicial mandate to treat with DAA's, beginning on 11-29-2017 Plaintiff was provided the DAA treatment by Defendant Centurion and the same was completed in February, 2018. Plaintiff's liver condition has suffered and has become worse and now life-threatening. Centurion's failure to treat in a timely fashion, *inter alia,* has ultimately led to needless and extreme abdomen pain, emotional distress, fatigue and overall decreased life-style, and a severe loss of weight. Plaintiff once weighted 220 pounds and stood five foot eleven inches in height. As of August 18, 2015 Saleem's weight had plummet to only 170 lbs. Plaintiff suffers from severe pain in his abdomen daily.  Severe fatigue on a daily basis.  He is apprehensive about and fearfully anticipates, liver failure. He suffers from extreme loss of sleep. As a result of the unreasonable delay, August 22, 2016-- to November, 2018, Plaintiff's health underwent considerable erosion. The harm is already irreparable in the sense that it is beyond

remediation. As early as 2009, various texts accepted by the medical community bore witnesses to the advantages of prompt treatment. See for example: <u>Living With Hepatitis "C" 5th Edition, Mr. Gregory T. Everson, M.D., F.A.C.P.</u> 2009, pg. #160, stating in sum, "If you had advanced fibrosis or cirrhosis, you are at risk for liver cancer even if you are a sustained responder and no longer have hepatitis C." Additionally, "…[p]atients with advanced fibrosis or cirrhosis run a considerable lifetime risk of developing hepatoma…" (id. at pg.#199) "As blood backs up in the spleen, cells become trapped and are destroyed—resulting in a decrease in platelets, red cells, and white cells."

**(11)** When Defendant <u>Centurion</u> assumed Corizon's contract on August 24, 2016, it was apparent that Plaintiff had been interviewed by Medical-Service Contractor Physician, Doctor Lester Quinone, on August 18, 2015, the fourth Clinician in fifteen months. Doctor Lester Quinone, confirmed Doctor Melendez and noted that timely course of treatment for Inmate Saleem's Hepatitis C was necessary. At that time, as well as when Defendant <u>Centurion</u> took over, their existed a list of prisoners that required immediate treatment via DAA's. It is without dispute that Plaintiff's name was on that list. See ¶ #9, *supra.*

**(12)** Defendant Centurion by and through Defendants <u>John Doe #1-3</u>, <u>Thomas Reimers</u>, Director Health Services, <u>Erron Campbell</u>, Medical Director, <u>Daniel Cherry</u>, <u>Centurion's</u> Former Medical Director, FDC., Dr.<u>E. Perez—Lugo</u>, Former Chief Health Officer, UCI, in conjunction with Defendant <u>Jones</u> via policy and practice intentionally did not provide treatment to Plaintiff and utilized the "Corizon Method" of mock monitoring Plaintiff's infection, until Plaintiff's liver was damaged beyond repair

## VI.    STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V. If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.

## CENTURION OF FLORIDA, LLC.,

## (13) CENTURION OF FLORIDA, LLC

Plaintiff incorporates by reference paragraphs # 1-12, *supra* and states, This Defendant in Its official capacity pledged competent health care for Florida prisoners upon assuming the Corizon LLC contract with Defendant <u>Jones</u>, FDC, State of Florida, via a no-bid award.  This Defendant understood that statutory obligation of care existed via special obligation of Defendant <u>Jones</u>, per FS. 20.315 (3).  In so contracting, Defendant pledged to provide care within accepted medical norms and not to deprive needy prisoners of critical care because of cost. This for profit Defendant was well aware of the thousands of HCV infected FDC prisoners as well as the standards of care plead *supra*, chose to disregard obligation to provide critical care for serious medical needs of Plaintiff, via policy, practice and custom, until Plaintiff's liver was irreparably damaged.  The motivating force was not to spend money, thusly increasing profits. As a result this Defendant rewarded each of the Defendants (excepting Jones) with salary raises, bonuses and other incentives upon profit increases, in furtherance of advancement of the blind eye, no treatment policy, practice and custom.  This policy and custom of operation unimpeded and ratified in furtherance by Defendant Secretary <u>Jones</u>, IISC positions.  When the obligation to care was taken over by Defendant <u>Centurion</u>, It had already reached agreement with the Defendants of ¶ 13-2__, *infra*, not to treat infected inmates –Plaintiff, due to cost.  This conduct violated Plaintiff's clearly established 8th Amendment guarantee to be free from cruel and unusual punishment.  This Defendant's actions and inactions were under the color of state law and in the furtherance of profit per policy and practice.

### (14) <u>JOHN DOE #1-3,</u>

Plaintiff incorporates by reference paragraphs # 1-12, *supra* and states: Defendants <u>Centurion</u>, by and through Its agents <u>John Doe #1-3</u>, referred to as "sound clinicians" repeatedly by Defendant <u>E. Perez-Lugo</u> throughout the health care grievance process, knew that the FBOP-- CDC guideline change of 2014-2016, mandated that Plaintiff receive evaluation and DAA's {the Cure}, and other designated care.  These Defendants knew from inception of replacing Corizon that Defendant <u>Centurion</u> would not spend the funds necessary to treat Plaintiff and others infected with HCV.  As a result of their agreement with Defendant <u>Centurion</u> and Defendants named herein, did further the policy and custom of non-treatment with DAA's as a result of cost by ordering that Plaintiff not be treated and that the standard of care be ignored.  This conduct continued until judicial mandate to treat was apparent and violated Plaintiff's clearly established 8th Amendment guarantee to be free from cruel and unusual punishment.  Plaintiff's failing liver

is a direct result of this Defendants actions acting in furtherance of the scheme to profit. This Defendant's actions and inactions were under the color of state law and the moving force of the policy and practice was furtherance of profit. Each of these Defendants are sued in their individual capacities.

### (15) **THOMAS REIMERS**, Director Health Services,

Plaintiff incorporates by reference paragraphs # 1-12, *supra* and states: This Defendant was charged by position to direct over-all health services to *inter alia*, prisoners' infected with the virus. This Defendant did act in agreement to prevent evaluation and treatment of infected prisoners/Plaintiff, per policy and practice of Centurion, as directed and implemented by *inter alia* Defendants John Does #1-3. Each Defendant was in agreement not to implement applicable standards of care, the mandated evaluation and treatment guidelines. This Defendant, acting in individual capacity, required suppression of numbers of infected prisoners and required John Doe #1-3, Dr E. Perez-Lugo, Former, Chief Health Officer UCI, to comply with the policy and practice of suppression of existence of FBOP evaluation and treatment and to deny care. The moving force behind this policy, practice was to cut costs by not spending money on evaluation and treatment. Defendant Centurion rewarded each Defendant with pay incentives and other profit sharing bonuses resulting from the policy and practice. This Defendant knew of the 2016 FBOP-CDC guideline changes mandating care for Plaintiff and ignored obligation to provide care. This Defendant utilized his position as Director Health Services to employ policy and custom of Centurion to disregard evaluation and care. This custom was approved by Defendant Jones and employed the boiler plate HCG pattern denial. As Director Health Services this Defendant had an obligation to ensure that the protocol, be followed. Instead, acting in concert with Defendants named herein and yet to be identified; this Defendant permitted, ratified and encouraged the conduct resulting in no care for Plaintiff as part and parcel of the orchestrated efforts to save money. This Defendant did so in his individual capacity with wanton indifference to the deaths and misery caused by implementation of the no evaluation-no treatment policy and custom. This conduct violates Plaintiff's 8th Amendment guarantee, has caused Plaintiff physical pain and suffering. Plaintiff's failing liver is a direct result of this Defendants actions acting in furtherance of the scheme to profit.

**(16) DANIEL CHERRY**, Centurion's Former Medical Director, FDC

Plaintiff incorporates by reference paragraphs # 1-12, *supra,* and states:  This Defendant was charged by position to direct over-all health services for Defendant Centurion to *inter alia,* prisoners' infected with the virus. This Defendant did act in agreement to prevent evaluation and treatment of infected prisoners/Plaintiff, per policy and practice of Centurion, as directed and implemented by Defendants John Does #1-3.    Each Defendant was in agreement not to implement FBOP 2014 (et al), evaluation and treatment guidelines.  This Defendant, acting in individual capacity, required suppression of numbers of infected prisoners and required John Doe #1-3, E. Perez-Lugo, Former, Chief Health Officer UCI, to comply with the policy and practice of suppression of the number of infected prisoners, the existence of FBOP evaluation and treatment guidelines and to deny care.  The moving force behind this policy, practice was to cut costs by not spending money on evaluation and treatment.  Defendant Centurion rewarded each Defendant with pay incentives and other profit sharing bonuses resulting from the policy and practice. This Defendant knew of the 2014-2016 FBOP-CDC guideline changes mandating care for Plaintiff and ignored requirement to provide care.  This Defendant utilized his position as Director Health Services to employ policy and custom of Centurion to disregard FBOP-CDC standards of care. This custom was approved by Defendant Jones and employed a boiler plate HCG, denial to delay and deny care. As Director Health Services this Defendant had an obligation to ensure that standards of care be followed.   Instead, acting in concert with Defendants named herein and yet to be identified; this Defendant permitted, ratified and encouraged the conduct resulting in no care for Plaintiff, as part and parcel of the orchestrated efforts to save money. This Defendant did so in his individual capacity with wanton indifference to the deaths and misery caused by implementation of the no evaluation-no treatment policy and custom. This conduct violates Plaintiff's 8th Amendment guarantee, has caused Plaintiff physical pain and suffering. Plaintiff's failing liver is a direct result of this Defendants actions acting in furtherance of the scheme to profit.

**(17) ERRON CAMPBELL** Medical Director

Plaintiff incorporates by reference paragraphs # 1-12 *supra,* and states:  This Defendant was charged by position of over-all health services to *inter alia*, prisoners infected with the virus, in his individual capacity.   Defendant Erron. Campbell, did act in agreement to prevent evaluation and treatment of infected prisoners/Plaintiff, per policy and practice of Corizon, as

directed and implemented by Defendants Woodrow A. Myers, Jr. Chief Operating Officer, Rhonda Almanza Vice-President of Operations, Region II, Helen Sneed., Director Of Operations, Region II, and did so knowing that Teresa Woodal Infectious Disease Control, Region II, would be in agreement not to implement ¶ 2-4, *supra.* The moving force behind this policy, practice was to cut costs by not spending money on evaluation and treatment. Defendant Corizon rewarded each Defendant with pay incentives and other profit sharing bonuses resulting from the policy and practice. Acting in concert with Defendants named herein and yet to be identified, this Defendant permitted, ratified and encouraged the conduct resulting in no care for Plaintiff as part and parcel of the orchestrated effort to profit. This Defendant did so in his individual capacity with wanton indifference to the deaths and misery caused by implementation of the no evaluation-no treatment policy and custom. This conduct has caused Plaintiff physical pain and suffering and violates Plaintiff's 8th Amendment guarantee. Plaintiff's failing liver is a direct result of this Defendants actions acting in furtherance of the scheme to profit.

### (18) E. PEREZ—LUGO, Former UCI Chief Health Officer

Plaintiff incorporates by reference paragraphs # 1-12, *supra,* and states: This Defendant while employed by Centurion at UCI, intentionally did not advise Plaintiff of the 2014-2016 BFP- CDC treatment guideline change, and fabricated excuses as to why Plaintiff had not been treated. Defendant Perez Lugo denied Plaintiff: the DAA cure, meaningful pain relief, and personally denied institutional HCG in furtherance of Centurion's policy to save money, resulting in denial of cure by DAAs as well as to be recommended for liver transplant. Defendant Perez-Lugo never mentioned the possibility of recommendation for a liver transplant . This Defendant lied to Plaintiff when informing Plaintiff that no medical help existed to prevent further spread of the virus and to save Plaintiff's life. Agent of Defendant Jones Michelle Schouest, IISC, and agents yet to be shown, advanced and employed this policy, practice and custom for Defendant Centurion by boiler plate denial of HCGs, extinguishing life saving treatment and humane ameliorative care. Defendant E. Perez-Lugo's actions while employed by Defendant Centurion were ratified by Defendants named in this Complaint, per their policy and custom in furtherance of profit. While employed by Defendant Centurion, E. Perez-Lugo's actions were ratified by Defendants John Does#1-3, Thomas Reimers, Erron Campbell, Daniel Cherry and Julie L. Jones, per policy, custom in furtherance of profit. This Defendant's conduct in his individual capacity, while employed by Centurion, resulted in intentional delay of

treatment causing deterioration of Plaintiff's liver to an F4 on the METAVIR scale. Plaintiff has suffered and continues to suffer from the result of this Defendant's conduct. In fulfilling this role, this Defendant acted with ill will, spite and animus in an individual capacity, under the color of state law and the conduct violates the 8th Amendment guarantee to be free of cruel and unusual punishment.

**(19) <u>JULIE L. JONES,</u>** Secretary, FDC, Official Capacity

Ms. Jones as Secretary of the FDC, is directly responsible for Plaintiff's health care and could not abrogate that responsibility as established by FS.20.315 (3), by contracting the same to <u>Centurion</u>. Ms. Jones knew or should have known that the CDC changed treatment guidelines for HCV in 2014-2106, requiring Defendants <u>Centurion</u> to comply with updated mandate to evaluate and treat Plaintiff and other HCV infected inmates. Ms. <u>Jones</u> knew that Defendant <u>Michelle Schouest, IISC,</u> and other designees to be shown, acted in furtherance of plan, scheme and policy of Defendants <u>Corizon</u> and <u>Centurion</u> to "boiler plate" denials of health care grievances (HCG) in defiance to FBOP evaluation and treatment guidelines, including DAA's due to cost. Ms. <u>Jones</u> knew the Defendants named in this complaint, would defy the requirement to treat Plaintiff with DAA's when they were awarded the no bid contract. Defendant <u>Jones,</u> FDC, intentionally declined to request from the State necessary funds to treat infected prisoners —plaintiff and refused to require the defendants named herein to treat Plaintiff. This political allegiance agreement deliberately concealed the existence and availability of DAA's and did so with ill will, spite and no concern for humane treatment. Defendant <u>Jones</u> did this in furtherance of profit for Defendant <u>Centurion</u> as Secretary <u>Jones</u> knew that if demand for mandated evaluation and care was asserted, <u>Centurion</u> would back out. Thusly a political allegiance with person(s) yet identified was agreed to that demand for treatment funds and treatment would not be available. Ms <u>Jones</u> knew that the no-bid award of health services to defendant centurion would exclude care for HCV infected prisoner—Plaintiff. Ms. <u>Jones</u> was aware that the for profit company had agreement with a high ranking State official to develop FDC policy and practice, to routinely deny evaluation and care, in furtherance of profit. This conduct violates Plaintiff's 8th Amendment guarantee to be free of cruel and unusual punishment.

## VII.  RELIEF REQUESTED:

State briefly what relief you seek from the Court. Do not make legal arguments or cite cases/statutes.

## COMPENSATORY DAMAGES

**Centurion**

Plaintiff seeks compensatory damages in the amount of One million dollars from Defendant Centurion.

Plaintiff seeks compensatory damages in the amount of $500,000 from Defendants: John Doe #1-3, E. Perez—Lugo, Thomas Reimers, Erron Campbell, Daniel Cherry,

## PUNITIVE DAMAGES

Plaintiff seeks punitive damages in the amount of $500,000 from each Defendant in their individual capacity; Defendants Doe #1-3, E. Perez—Lugo, Thomas Reimers, Erron Campbell, Daniel Cherry,. In doing so, Plaintiff states in sum that punitive damages are appropriate where the actions and inactions of these Defendants are reprehensible, in that the Defendants knew that their policy and practice as plead herein would result in Plaintiff's pain and suffering then an excruciatingly painful death. That each Defendants conduct was motivated by evil intent, or it involved reckless or callous indifference to the federally protected rights of Plaintiff—his serious medical need, the suffering caused by policy and practice of Defendants and now his eventual death. That each Defendant participated and ratified the policy of deprivation in furtherance of common scheme not to inform or treat—for profit. These actions and inactions were orchestrated and designed and ratified into policy and practice by these Defendants and are cruel and have caused unnecessary and wanton infliction of pain. This intentional for profit policy and custom not to inform and to deny treatment constitute deliberate indifference to serious medical needs of Plaintiff and constitutes the unnecessary and wanton infliction of pain.

## INJUNCTIVE AND DECLARATORY RELIEF

**Julie L. Jones**   Plaintiff seeks injunctive relief for treatment, (recommendation for liver transplant) ameliorative care, including pain medications, {all to be determined}.

As for declaratory relief of Secretary Jones, Plaintiff prays that order enter finding that FDC acted in concert with Centurion not to advise prisoners of the 2014-2016 FBOP-CDC guideline change and in doing so, ultimately denied Plaintiff mandated evaluation and care. That

FDC knew at the time of the award of the no-bid contract with Defendant Centurion, that funds would not be provided for treatment by <u>Centurion</u> and that per political aliegance with person(s) yet unnamed would not be solicited on behalf of the affected prisoners. That FDC acted in concert with <u>Centurion</u> to deny care in furtherance of profit and without regard to humane, mandated care. That the conduct of each Defendant herein individually and collectively has violated Plaintiff's 8th Amendment guarantees to be free from cruel and unusual punishment. **Prevailing party fees and costs.**

I declare under penalty of perjury that I have read the above and have had it explained to me by John A. Wright #038270, and that the foregoing statements of fact, including all continuation pages, are true and correct. Dated this ___*16*___ day of ___*October*___,2018

WALI SALEEM ##037727 C3-105-2
Union Correctional Institution
P. O. Box 1000
Raiford, Fla. 32083

## <u>Mailing Certificate</u>

I certify under penalty of perjury that this complaint was provided to UCI Correctional Staff for mailing in envelope addressed to Office of the Honorable Clerk, United States District Court at United States Courthouse 111 N. Adams St. Tallahassee, FL 32301-7730 on: the ___*16*___ day of ___*October*___, 2018.

WALI SALEEM ##037727

Union Correctional Institution
P.O. Box 1000
Raiford, Florida 32083-1000

Mailed from a state
Correctional Institution

United States District Court
Northern District of Florida
111 N. Adams Street, Ste. 232
Tallahassee, Florida 32301-7730

LEGAL MAIL



RECEIVED
UNION CORRECTIONAL INSTITUTION
OCT 16 2018
BY ____ FOR MAILING